RECEIVED 
JUL 3 0 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| Rebekah H. Miller, | No. 1:06-cv-01250 (RMU) |
| Plaintiff, | |
| v. | MOTION FOR RELIEF FROM ORDER OF DISMISSAL UNDER FED.R.CIV.P. 60(b)(3), (6) |
| UNITED STATES, | |
| Defendant. | |

## MOTION FOR RELIEF FROM ORDER OF DISMISSAL

Plaintiff seeks relief from this Court's Order of July 19, 2007 dismissing the above-captioned action on the basis that said Order was obtained by means specified in Fed.R.Civ.P 60(b)(3) and (6).

As grounds for the relief sought, Plaintiff respectfully asserts Counsel for the defendant intentionally misled this Honorable Court concerning the issue of its subject matter jurisdiction over Plaintiff's Verified Complaint.

A memorandum of points and authorities in support of this motion and a proposed order are submitted herewith.

Dated July 27, 2007

Respectfully submitted,

_[signature]_
Rebekah H. Miller

# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| Rebekah H. Miller, | No. 1:06-cv-01250 (RMU) |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF FROM ORDER OF DISMISSAL UNDER FED.R.CIV.P. 60(b) (3), (6)** |
| v. | |
| UNITED STATES, | |
| Defendant. | |

Plaintiff seeks relief from this Court's Order of July 19, 2007 dismissing the above-captioned action on the basis that said Order was obtained by means specified in Fed.R.Civ.P 60(b)(3) and (6).

Fed.R.Civ.P 60(b) states:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ***(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; *** or (6) any other reason justifying relief from the operation of the judgment.

Plaintiff asserts in the Motion that defendant, by and with the active assistance of counsel, perpetrated a fraud upon the Court, through misrepresentation of fact, law, and legal precedent, to obtain the said Order. This motion is supported by the questions, alternative questions, and supplemental questions presented in the Motion which this MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF FROM ORDER OF DISMISSAL UNDER FED.R.CIV.P. 60(b)(3), (6), (hereinafter, "Motion") and the Exhibits incorporated herein, support.

## QUESTION PRESENTED

Did the defendant, by and with the active assistance of counsel, misrepresent the status of the Court's subject matter jurisdiction?

## DISCUSSION

As discussed in Plaintiff's Motion, the Court's <u>subject matter</u> jurisdiction was verified by the Supreme Court in *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235 (2006), decided February 22, 2006, and that precedent was cited by the District Court in *Turner v. United States*, 429 F.Supp.2d 149 (D.D.C. 2006), in Lindsey v. United States, 448F.Supp.2d 37 (D.D.C. 2006), and their progeny. *Arbaugh* was decided February 22, 2006, and preceded defendant's motion to dismiss by seven months, yet defendant, with the active assistance of counsel, presented "lack of subject matter jurisdiction" as a primary ground for dismissal.

## ALTERNATIVE QUESTION PRESENTED

Was the ground of "failure to state a claim" under Fed.R.Civ.P. 12(b)(6) premature, in the context of "notice pleadings" under Fed.R.Civ.P 8(a), *Conley v. Gibson*, 355 U.S. 41, and Fed.R.Civ.P 12(h)(2)?

## ALTERNATIVE DISCUSSION

In *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235 (2006), the Supreme Court examined "essential element of a claim" with respect to factual matters. *Arbaugh*, at 1240. *Citingto Reeves v. Sanderson Plumbing Products, Inc.*, 530 U. S. 133, the *Arbaugh* Court reiterated:

> "If satisfaction of an essential element of a claim is at issue, however, the jury is the proper trier of contested facts."

This Court has already determined that "exhaustion" is a factual issue, and defendant, which maintains vigorous disagreement with the *Arbaugh* Court, has been wont to assert that Plaintiff has failed to plead exhaustion. Once again, the United States Supreme Court disagrees.

In *Jones v Bock* (Nos. 05-7058 and 05-7142) __ U.S. _____, (Argued: October 30, 2006 -- Decided: January 22, 2007), the Honorable Roberts, C.J., opined that:

> "Failure to exhaust is better viewed as an affirmative defense. Federal Rule of Civil Procedure 8(a) requires simply a 'short and plain statement of the claim' in a complaint..."

and that,

> "The fact that the [statute at issue]...is silent on the issue whether exhaustion must be pleaded or is an affirmative defense, is strong evidence that the usual practice should be followed, and the practice under the Federal Rules is to regard exhaustion as an affirmative defense..."

The *Jones* Court also reiterated:

> "Courts should generally not depart from the Federal Rules' usual practice based on perceived policy concerns. See, e.g., *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U. S. 163,"[Ft 1]

and,

> "Given that the [statute at issue] does not itself require plaintiffs to plead exhaustion, such a result 'must be obtained by amending the Federal Rules, and not by judicial interpretation.' *Leatherman*, supra, at 168. Pp. 10-16."

Plaintiff asserts that the Verified Complaint met the "notice pleading" requirements set forth in Fed.R.Civ.P. 8(a), as interpreted in Conley v. Gibson, 355 U.S.41[Ft 2], and reiterated in *Jones v.*

---

[Ft 1] Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S.163 Held: A federal court may not apply a "heightened pleading standard" – more stringent than the usual pleading requirements of Federal Rule of Civil Procedure 8(a).

[Ft 2] "(b) Failure of the complaint to set forth specific facts to support its general allegations of discrimination was not a sufficient [355 U.S. 42] ground for dismissal of the suit, since the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Pp. 47-48.

*Bock* (Nos. 05-7058 and 05-7142) __ U.S. _____(January, 2007), and that defendant's Motion to Dismiss, insofar as it asserted "failure to state a claim", is premature, and an attempt to pre-empt the jury's authority as the "proper trier" of the contested "essential element" of exhaustion of "administrative remedies <u>available</u> " as described in IRC § 7433(d).

7433(d)'s language - "unless the court determines" - in the common English to which *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984) referred, Id., 861, calls for a determination of fact; clearly within the province of the jury. *Arbaugh*, 1240; *Reeves*. Thus, motion to dismiss on grounds of "failure to state a claim" can be, and, based upon the Congressional language, <u>is</u>, more properly brought <u>after</u> the Court (see footnote # 1)has had the opportunity to make a factual determination with respect to exhaustion of <u>available</u> administrative remedies. [Ft 3], [Ft 4]

Defendant could not seriously assert prejudice by the jury's trial of the factual element, since the jury could, upon examination of all relevant facts, find that available remedies were not exhausted; Fed.R.Civ.P 12(h)(2) allows a Motion to Dismiss for "failure to state a claim" any time prior to judgment, to wit:

> "A defense of failure to state a claim upon which relief can be granted...may be made in any pleading permitted or ordered under Rule 7(a), [Ft 5] or by motion for judgment on the pleadings, <u>or at the trial on the merits</u>." Fed.R.Civ.P 12(h)(2)(emphasis added)

---

[Ft 3] Plaintiff asserts that "the court" contemplated in IRC § 7433(d) comprises, for purposes of factual determinations, both the judge and the jury.

[Ft 4] The Congressional language of 7433(d) is further addressed below.

[Ft 5] "Pleadings permitted" are limited to "complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer." (Emphasis added)

## SUPPLEMENTAL QUESTION PRESENTED

Are "general allegations", in the context of the Fed.R.Civ.P 8(a) "notice Pleadings" Rule, as interpreted in *Conley v. Gibson,* 355 U.S. 41, and reiterated in *Jones v Bock,* __ U.S. _____, (Decided: January 22, 2007) (purportedly made by a multitude of Plaintiffs), sufficient to establish a presumption of a pattern of unlawful activity?

## DISCUSSION

Defendant, by and with the assistance of counsel, raised the issue that the allegations in the instant case are substantially similar to those made in more than eighty (80) other cases filed to this Court. Plaintiff, concerned only with the instant case, asserts that any alleged similarity of allegations in other cases is irrelevant in respect of the instant case, and draws the Court's attention to the fact that the alleged redundancy of such "general allegations", especially in the numbers asserted by defense counsel, strongly indicates a pattern of unlawful activity on the part of defendant's agency. As contemplated in the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961(5):

> (5) "pattern of racketeering activity" [Ft 6] requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment)after the commission of a prior act of racketeering activity...

---

[Ft 6] As used in Title 18, Chapter 96-
(1) "racketeering activity" means (A) any act or threat involving...extortion; (B) any act which is indictable under ... title 18, United States Code: section 1028 (relating to fraud and related activity in connection with identification documents), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1503 (relating to obstruction of justice), section1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section1513 (relating to retaliating against a witness, victim, or an informant), sections 1581-1591 (relating to peonage, slavery, and trafficking in persons), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering) ...

Acts generally complained of in the Verified Complaint in the instant case arguably include, or necessarily lead, if true, to the requisite two (2) acts listed in 18U.S.C. § 1961(1), such as 1) extortion, in forcing Plaintiff to make financial "arrangements" to avoid attack on property, and acts indictable under Title 18, United States Code: §§ 1028, 1341, 1343, 1344, 1503, 1510, 1511, 1512, 1513, and 1951, if committed by any other person, 18 U.S.C. § 1961(3) or enterprise 18 U.S.C. § 1961(4).

## QUESTION PRESENTED

Did defendant's agency fail to make <u>any</u> *substantive* "administrative remedies available" under 102 Stat. 3747 (TBOR I), 110 Stat. 1465 (TBOR II), or 112 Stat. 730(TBOR III), *aka* IRC § 7433?

## DISCUSSION

I have asserted, and re-assert, that the history of "26 CFR 301.7433-1" is its own best evidence that IRS refused to even establish procedures for four years after the right to bring an action was granted by Congress.<sup>Ft 8</sup> I have also asserted that "26 CFR 301.7433-1" currently imposes a prohibitive provision omitted by Congress (which defendant vigorously denied). Further review of Official documents of the Office of the Federal Register establish that defendant's response that "TBOR III...reinstated, verbatim, the language of TBOR I", is irrelevant, because "26 CFR 301.7433-1" lacks the "certain substantive characteristics" and "certain procedural requisites" *Chrysler v. Brown*, 441 U.S. 281, at 301, of "a substantive rule-- or a "legislative-type rule," Id., 302; neither the Secretary of the Treasury nor any authorized

---

[Ft 8] Timing was a particular factor considered in Batterton v. Francis, 432 U.S. at 425 n. 9, and quoted in Chrysler v. Brown, 441 U.S. 281, at 315, infra, in differentiating "substantive" and "interpretative (interpretive)" regulations. The "timing" of T.D. 8392, 57 FR 3536, Jan. 30, 1992; 57 FR5931, Feb. 18, 1992, as amended by T.D. 9050, 68 FR 14320, Mar. 25, 2003, is discussed below.

delegate made any substantive "administrative remedies available" IRC § 7433 "affecting individual rights and obligations" *Morton v. Ruiz*, 415 U.S. 199, at 232, under any incarnation of Internal Revenue Code section 7433.

>As the Honorable Rehnquist, J., stated in Chrysler v. Brown, 441 U.S. at 301,302,:
>
>>"In order for a regulation to have the "force and effect of law," it must have certain substantive characteristics and be the product of certain procedural requisites. The central distinction among agency regulations ...is that between "substantive rules" on the one hand and "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice" on the other. *** But in Morton v. Ruiz, 415 U.S.199, 94 S. Ct. 1055, 39 L.Ed.2d 270 (1974), we **1718 noted a characteristic inherent in the concept of a "substantive rule." We described a substantive rule--or a "legislative-type rule," id., at 236, 94 S. Ct., at1074-as one "affecting individual rights and obligations." Id., at 232, 94S.Ct., at 1073. This characteristic is an important touchstone for distinguishing those rules that maybe "binding" or have the "force of law."

Id., at 235, 236,94 S. Ct., at 1074."

"[T.D. 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, as amended by T.D. 9050, 68 FR 14320, Mar. 25, 2003]" lacks the "complete citation of the [Ft 9] authority under which the section is issued" required by 1 CFR 21.40, "including-(a) General or specific authority delegated by statute; and (b)Executive delegations, if any, necessary to link the statutory authority to the issuing agency", one of the Agency Responsibilities published in 1 CFR 21.41. The published "26 CFR 301.7433-1"contains neither a citation to 102 Stat. 3747 (TBOR I), nor to 110 Stat. 1465 (TBOR II),nor to 112 Stat. 730 (TBOR III), *aka* IRC § 7433, in any incarnation, as the source of authority, as required by the Office of the Federal Register in its administration of the Federal Register Act, at 1 CFR 21.43(a), and 1 CFR 21.52; nor does it contain a citation to any substantive authority, as exemplified in 1 CFR 21.45, and 1 CFR 21.53.

---

[Ft 9] This series of Treasury Decisions purporting to "promulgate" and "amend" 26 CFR 301.7433 is quoted directly therefrom, including the brackets.

7

Based upon the standard established by <u>Chrysler v. Brown</u>, *supra*, <u>Morton v. Ruiz</u>, *supra*, and by the Office of the Federal Register publishing the Code of Federal Regulations [Ft 10] in its administration of the Federal Register Act, "26 CFR 301.7433-1" is nothing more than an "interpretative regulation" not "affecting individual rights and obligations".

In deciding upon the distinction between "substantive" and "interpretative (interpretive)" regulations, the <u>Chrysler</u> Court pointed out, at 441 U.S. 315, that the regulation at issue therein established, *inter alia*:

> " 'As the changes made by this document relate solely to interpretive rules, general statements of policy, and to rules of agency procedure and practice, neither notice of proposed rule making nor public participation therein is required by 5 U.S.C. 553. Since the changes made by this document either relieve restrictions or are interpretative rules, no delay ineffective date is required by 5 [441 U.S. 315] U.S.C. 553(d). These rules shall therefore be effective immediately.' "

<u>Chrysler</u> found, "Thus, the regulations were essentially treated as interpretative rules, and interested parties were not afforded the notice of proposed rulemaking required for substantive rules under 5 U.S.C. § 553(b)."

<u>Chrysler v. Brown</u> followed, at 441 U.S. 315, its own precedent, set 2 years previously:

> "As we observed in Batterton v. Francis, 432 U.S. 416, 425 n. 9, 97 S.Ct.2399, 2405 n. 9, 53 L.Ed.2d 448 (1977):
>> "[A] court is not required to give effect to an interpretative regulation. Varying degrees of deference are accorded to administrative interpretations, based on such factors as the timing and consistency of the agency's position, and the nature of its expertise."
> "We need not decide whether these regulations are properly characterized as "interpretative rules." It is enough that such regulations are not properly promulgated as substantive rules, and therefore not the product of procedures which Congress prescribed as necessary prerequisites to giving a regulation the binding effect of law."

---

[Ft 10] ("...[T]he codification of the general and permanent rules published in the Federal Register by the executive departments and agencies of the Federal Government". SEE 1 CFR 2.5(b); 1 CFR 8.1).

The published "26 CFR 301.7433-1", containing only the bracketed reference"[T.D. 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, as amended by T.D. 9050, 68 FR 14320, Mar. 25, 2003]", contains the statement, in part, that:

> "It also has been determined that section 553(b) of the Administrative Procedure Act (5 U.S.C. chapter 5) does not apply to these regulations..."

Section 4 of the Administrative Procedure Act, at 5 U.S.C. § 553(b), provides for ONLY two exceptions to the requirement that "General notice of proposed rule making shall be published in the Federal Register":

> "*****
>
> "Except when notice or hearing is required by statute, this subsection does not apply –
> "    (A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or
> "    (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."

In the clear absence of an incorporated "finding and a brief statement of reasons therefor" as specified in 5 USC § 553(b)(3)(B), the assertion that "section 553(b) of the Administrative Procedure Act...does not apply to these regulations...", "26 CFR301.7433-1" is its own best evidence that it is "an interpretative regulation" Chrysler,441 U.S. 281 at 315; Batterton v. Francis, 432 U.S. 416, 425 n. 9, not "affecting individual rights and obligations" Morton v. Ruiz, 415 U.S. at 232, that "[A] court is not required to give effect to" Batterton v. Francis, *supra*.

As referenced in footnote #8, *supra*, Batterton v. Francis, *supra*, identified "timing" as a factor in determining whether a regulation is "substantive" or "interpretive"("interpretative").

Treasury Decision 8392 was not promulgated until January 30, 1992, and not published, 57 FR 5931, until February 18, 1992; nearly three (3) years after Congress enacted TBOR I.

9

Treasury Decision 9050 was not promulgated until March 5, 2003, effective until March 25, 2003, more than four years and nine months after Congress' enactment of TBOR III. In fact, the regulation was not even proposed until March 5, 2002. Federal Register: Volume 67, Number 43, Page 9929-9934. [Ft 11]

This period of "unavailability" of administrative remedy, i.e., the "timing" discussed in Batterton, *supra*, is a factor that this Court should consider in respect of the March 25, 2003 version of the regulation.

AVAILABILITY OF REMEDY

A comprehensive history of IRC § 7433 was published by the American Bar Association, and Plaintiff respectfully directs the Court's attention to what the Bar had to say about the re-amendment:

> "[F]ew pro se plaintiffs have actual notice of the process established by Treasury Regulation section 301.7433-1. Congress should understand many people's distrust of the ability of the IRS to proceed with their claims..."

As discussed below, the Bar's recognition that "few pro se plaintiffs have actual notice of the process" directly addresses "availability" of remedy, as shown by IRS' published policy regarding return of amounts unlawfully collected. Internal Revenue Service Policy P-5-36, published in the Internal Revenue Manual, at 1.2.1.5.9, is to refrain from returning amounts unlawfully collected. P-5-36 states:

"(1)   Returning money wrongfully collected: This Policy Statement has been revoked."

---

[Ft 11] In respect of Congress' removal of the jurisdictional prohibition in TBOR II (1996), the "Notice of proposed rulemaking" clearly shows that IRS was aware of Congress' removal of the jurisdictional prohibition. It must be noted that Treasury Decision 9050, as published, 68 FR 14320, purported to amend ONLY Treasury Decision 8392 (the 1992 regulation) indicating that no "final" regulation implementing the 1996 Act (TBOR II) ever became effective. "Remedy", under TBOR II, was never made "available".

Thus, even if IRS has collected unlawfully, and knows it, whatever Policy might have existed was revoked. The administrative remedy of filing a claim to recover unlawfully collected amounts is clearly unavailable when the Service Policy on such matters has been revoked.

THE REGULATION FRUSTRATES CONGRESS' INTENT

TBOR I, TBOR II, and TBOR III (RRA '98, § 3102) are testaments of Congress' awareness that IRS cannot be trusted to administer the tax code without supervision. Indeed, in the words of former Deputy Assistant Secretary of Treasury Bradford DeLong, now a Professor at University of California, Berkeley,

> "The IRS's comparative advantage is using random terror to elicit voluntary compliance with the tax code...".

Congress intended that Citizens harmed by IRS' legendary disregard of governing statutes and regulations have an avenue to be made whole. Once again, the Congressional "key" is _availability_ of the administrative remedy. As a matter of judicial precedent, Chrysler v. Brown, *supra*, Morton v. Ruiz, *supra*, and the procedural requirements imposed by the Office of the Federal Register publishing the Code of Federal Regulations in its administration of the Federal Register Act, applied to [Ft 12] Treasury Decisions 8392 and 9050 are and always were "an interpretative regulation "Chrysler, 441 U.S. 281 at 315; Batterton v. Francis, 432 U.S. 416, 425 n. 9, not "affecting individual rights and obligations" Morton v. Ruiz, 415 U.S. at 232, that "[A] court is not required to give effect to" Batterton v. Francis, *supra*.

---

[Ft 12] ("...[T]he codification of the general and permanent rules published in the Federal Register by the executive departments and agencies of the Federal Government". SEE 1 CFR 2.5(b); 1 CFR8.1).

11

Alternatively, if the Court makes a factual determination (province of the jury) that an administrative remedy is effectively unavailable, it need not be pursued. As established by Treasury Decisions 8392 and 9050, defendant's agency refused to even establish procedures for four years after the right to bring an action was initially granted by Congress. Administrative remedy, arguably available in an interpretative sense, is effectively unavailable in substance, as evidenced by Treasury Inspector General Tax Administration reports, mandated in RRA '98, section 1102, failing to show a single instance of IRS granting an administrative claim for damages. TIGTA Reports, spanning at least 5 years, are attached and incorporated by reference.

Agency expertise is another factor that Batterton v. Francis, *supra*, identified as worthy of consideration. Lack of specific attention to the statutory authorization was a factor in the Supreme Court's pronouncement in *Skidmore v. Swift & Co.*, 323 U.S. 134,140 (1944), quoted in *Adamo Wrecking Co. v. United States,* 434 U.S. 275, 287 n. 5(1978), and cited in *SEC v. Sloan*, 436 U.S. 103 (1978), further specifying that factors to be considered in giving weight to an administrative ruling include "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *SEC v. Sloan*, 436 U.S. 103, 117-118.

Treasury Decision 9050 itself is the best evidence of "Lack of specific attention to the statutory authorization" (Skidmore) and failure of "thoroughness…in its consideration" (Sloan). In Treasury Decision 9050's subsection (a), paragraph (1) thereof changes, "reckless or intentional actions" to "reckless or international actions…"(emphasis added).

Treasury Decision 9050 fails to remain consistent with P.L 105-206 section 3102; the procedures therein fail to conform to the law, and the regulation fails "all those factors which give it power to persuade." *SEC v. Sloan*, 436 U.S. 103, 117-118.

## THE ABJECT FUTILITY OF "EXHAUSTION OF ADMINISTRATIVE REMEDIES"

Notwithstanding the foregoing, as the Court pointed to in its order of July 19, 2007, this Plaintiff did file an administrative claim on July 22, 2006. To date, more than one full year later, IRS has failed to respond, deny, or otherwise address Plaintiff's administrative claim. Although Counsel for the defendant persists in arguing such "exhaustion", the reality is that this Plaintiff implemented such "exhaustion" more than a full year ago, and has not received any type of reply from the IRS. The abject futility of such "exhaustion" is evident. Defendant's agency has used the unenforceable "exhaustion" regulation as a means to delay litigation, and not as a remedy.

## SUMMATION

Counsel for the defendant has misled this Court by intentionally misrepresenting an interpretative regulation as one which has "force of law". As such, the Court's Order dated July 19, 2007, dismissing the above captioned mater for lack of jurisdiction should be ser aside.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully moves the Court to issue an ORDER setting aside its Order of July 19, 2007, reinstating the above captioned action, and such other relief as the Court deems appropriate.

Dated July 27, 2007

Respectfully submitted,

*/s/ Rebekah H. Miller*

Rebekah H. Miller

CERTIFICATE OF SERVICE

It is certified that true and complete copies of the foregoing MOTION FOR RELIEF FROM ORDER OF DISMISSAL UNDER FED.R.CIV.P. 60 (b) (3), (6), memorandum in support thereof, Exhibits, and proposed Order was served upon Counsels for the defendant by U.S. Mail on July 27, 2007, by mailing to the following addresses:

JENNIFER L. VOZNE
U.S. Dept. of Justice
P.O. Box 227
Washington, D.C. 20044

PAT S. GENIS
U.S. Dept. of Justice
P.O. Box 227
Washington, D.C. 20044

Date: July 27, 2007

By: /s/ Rebekah H. Miller
Rebekah H. Miller

# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| Rebekah H. Miller, | No. 1:06-cv-01250 (RMU) |
| Plaintiff, | |
| v. | **ORDER** |
| UNITED STATES, | |
| Defendant. | |

## ORDER

Plaintiff, having filed her Motion for Relief from the Court's ORDER of July 19, 2007, and the Court being duly and sufficiently advised in the premises now finds that the relief sought therein should be granted.

IT IS THEREFORE ORDERED that defendant's motion to dismiss [Doc. 4] is denied and the above captioned action is hereby reinstated.

Dated:_____, 2007

_____
UNITED STATES DISTRICT JUDGE